Eastern District of Kentucky
F I L E D
MAR 25 2019
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 17-47-HRW

DUSTIN AYALA, PLAINTIFF,

v. **MEMORANDUM OPINION AND ORDER**

MICHAEL HOGSTEN, *Individually and
In his Official Capacity as
Greenup County Deputy Sheriff* and
GREENUP COUNTY OFFICE OF SHERIFF, DEFENDANTS.

This matter is before the Court upon Defendants' Motion for Summary Judgment [Docket No. 32]. The matter has been fully briefed [Docket Nos. 36 and 39]. For the reasons set forth herein, the Court finds summary judgment is not warranted and the motion will be overruled.

**I.**

This civil rights case arises from the circumstances surrounding Plaintiff Dustin Ayala's arrest for menacing on May 28, 2016. The salient facts are set forth in detail in Plaintiff's response to Defendant's dispositive motion and, to a lesser extent, in Defendants' motion[1]. On that day, Defendant Greenup County Sherriff Deputy Michael Hogsten arrived at Ayala's residence with the purpose of serving him with an Emergency Protective Order ("EPO"),

---

[1] Defendants' motion is almost devoid of citations to the record.

1

pursuant to KRS 403.745. [Deposition of Michael Hogsten, Docket No. 31, p. 29]. The statute provides:

> An emergency protective order and a domestic violence order shall become effective and binding on the respondent when the respondent is given notice of the existence and terms of the order by a peace officer or the court or upon personal service of the order, whichever is earlier.

KRS 403.745.

When Hogsten arrived at Ayala's residence, Ayala was in the bedroom with his girlfriend, Breanna Ison. [Deposition of Justin Ayala, Docket No. 30, pp. 29-30]. According to Ayala, when he heard Hogsten "bang" on the front door, he got out of bed and began to dress. *Id.*, p. 30. Ayala testified that as he was putting on his shorts, he heard Hogsten "jiggle" the front door handle and attempt to enter the residence. *Id.* At this time, Ayala looked out the window and saw that a deputy sheriff trying to enter his home. *Id.* He asked Ison to use her phone to record the deputy's actions and proceeded to the front door. *Id.* According to Ayala, by this time, Hogsten had walked to the back of the residence and Ayala testified that he heard Hogsten try to open the back door. *Id.*, p. 31. It is unclear whether Hogsten disputes trying to gain entry to Ayala's residence. It is undisputed, however, that Hogsten never entered the residence. At this time, Ayala stated he stepped onto the small deck in front of his house and yelled to Hogsten that he was "out front." *Id.*

As Hogsten came back around to the front of the residence, he heard Ayala ask "[w]hat the fuck are you doing trying to get into my house?" [Docket No. 31, p.43]. Ison, who testified she witnessed the exchange, stated that Hogsten replied "[y]ou're a little prick, you know that?" [Deposition of Breanna Ison, Docket No. 29, p. 14]. Hogsten admits he called Ayala a "prick." [Docket No. 31, p. 74]. He also testified that he told Ayala to "calm down." *Id.* Hogsten then

2

informed Ayala that he was there to serve him with an Emergency Protective Order and then handed the order to Ayala. [Docket No. 31, p. 43 and 60].

Hogsten testified that after he gave the EPO to Ayala, Ayala asked Hogsten to leave but that he did not leave. *Id.* p. 66. Hogsten testified that he believed he was required to remain at the residence in order to explain to the terms and conditions of the order to Ayala. *Id.*

It is at this point that Ison began filming using her phone. The video captures approximately eight seconds and begins by showing Ayala on the front porch, holding the EPO in his hand, facing Hogsten, who is standing below the porch, at the foot of the steps which connect the porch to the front yard. Although Ayala is not seen in the fame, he can be heard yelling to Hogsten "get the fuck out of my yard." [Docket No. 36-1, Video]. The exchange continues:

>Mr. Hogsten: Come here boy.
>Mr. Ayala: Man Fuck you.
>Mr. Hogsten: Come on.
>Mr. Ayala: Get the fuck out of --
>Mr. Hogsten: Come on.
>Mr. Ayala: -- my yard --
>Mr. Hogsten: Come down here boy.
>Mr. Ayala: motherfucker go.
>Mr. Hogsten: No. Come on.
>Mr. Ayala: No Fuck you. Go. You don't have no -- you don't have no warrant.
>Mr. Hogsten: You're under arrest.
>Mr. Ayala: For what? You just said that shit to me.
>Mr. Hogsten: Menacing. Menacing.

*Id.*

As Hogsten says "menacing, menacing," he sprays Ayala in his face with pepper spray – twice. *Id.* Hogsten then climbs the steps to the porch and asks Ayala to put his hands behind his back. *Id.* Ayala hands are pulled behind his back by Hogsten but then the video shows Ayala

3

bringing his hands to his sides and, then, placing one hand on a beam. *Id.* Although Ayala is moving and talking, it is clear from the video that the pepper spray affected his eyes. Hogsten gets Ayala down the steps and places him in the back of his squad car. *Id.*

Ayala was charged with menacing pursuant to KRS 508.050 and, ultimately, acquitted by a jury.

This lawsuit followed wherein Ayala alleges the following state and federal claims claims against Hogsten and the Greenup County Sherriff's Office: unlawful search and seizure (Count I), unlawful detention (Count II), excessive force (Count III), assault (Count IV), battery (Count V), abuse of process (Count VI), malicious prosecution (Count VII and VIII), false imprisonment (Count IX), and violation of his right to free speech (Count X). [Docket No. 1]. Ayala seeks compensatory as well as punitive damages. *Id.*

Defendants' motion purports to seek summary judgment as to all claims alleged herein. However, their motion addresses only Plaintiff's claims of excessive force and improper arrest and argues that those claims are barred under the doctrine of qualified immunity.

## II.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The burden to show that there are no genuine issues of material fact falls on the parties seeking summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The claims for which Defendants seek judgment as a matter of law are made pursuant to 42 U.S.C. § 1983. Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City,* 471 U.S. 808 (1985).

Section 1983 has two requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections,* 270 F.3d 340, 351 (6th Cir. 2001), *citing Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998) *and United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 33 (6th Cir. 1992). Here, there is no dispute that the Defendants' acts constituted state action. However, Defendants argue that they did not deprive Plaintiff of his constitutional rights. To the extent that the evidence supports such a constitutional violation, they argue that they are entitled to qualified immunity.

In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-step inquiry. The first question is whether the facts, "taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The Court must consider whether, "taken in the light most favorable to the party asserting the injury," the facts alleged show that each defendant's conduct violated a constitutional right. *Id.* The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). Officers are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* In response to an assertion of qualified immunity, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel. Rohm v. Lubelan,* 476 F.3d 397, 403 (6th Cir. 2007).

### III.

### A. Excessive Force

"The Fourth Amendment of the United States Constitution protects a person from being subjected to excessive physical force during the course of an arrest, a booking, or other police

5

seizure." *Drogosch v. Metcalf,* 557 F.3d 372, 378 (6th Cir.2009). Analyzing a claim of excessive force "[u]nder the Fourth Amendment, [courts] apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of a defendant. *Graham v. Connor,* 490 U.S. 386, 396–97 (1989).

Three factors guide this inquiry: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *St. John v. Hickey,* 411 F.3d 762, 771 (6th Cir.2005)).

The calculus of reasonableness must be "assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir.2002). The United States Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment." *Graham,* 490 U.S. at 396.

Defendants argue that there is no evidence that the force used, to-wit, the two shots of pepper spray to Ayala's face was not excessive, but, rather objectively reasonable. Yet the facts cited by Plaintiff, as well as the video, tell a different story. Ayala does not appear to resist arrest, actively or otherwise. Hogsten pepper sprayed Ayala almost simultaneously while telling him he was under arrest. He issued no directive such as "hands up". Ayala had no opportunity to submit or comply before being hit with a chemical agent. Hogsten concedes as much in his deposition:

6

> Counsel: You had one arm up on a post. Did you even ask him or tell him to get on his knees?
> Hogsten: No.
> Counsel: Get down on the ground?
> Hogsten: No.
> Counsel: Put your hands behind your back?
> Hogsten: I told you that I didn't say anything like that.
> Counsel: No, I am asking you, did you tell him to put his hands behind his back?
>
> Hogsten: When I was up on the porch, after he was arrested, yes.
> Counsel: Before you sprayed him in the face with pepper spray, did you tell him to put his hands on his back?
> Hogsten: I did not.
> Counsel: Did you tell him to get down on his knees before you sprayed him in the face with pepper spray?
> Hogsten: No, sir. I did not.
> Counsel: Did you tell him to put his hands up against the wall before you sprayed him in his face with pepper spray?
> Hogsten: No, I did not.
> **Counsel: Did you not in fact tell him, "I am going to arrest you," and then immediately spray him with pepper spray before giving him any chance to even comply with your statement that you were placing him under arrest?**
> **Hogsten: That's fair to say, yes, sir.**

[Docket No. 31, pp. 76-77] (emphasis added).

With regard to any threat posed by Ayala, although Hogsten's states he felt threatened, aside from a conclusory statement in his motion, he does not cite to any portion of the record to support his contention. Indeed, the evidence belies it. In the video, Hogsten appears to be attempting to provoke Ayala, gesturing him to come down the steps, calling, "come on boy....come down here boy." He does not have the posture or countenance of a man under threat.

7

Hogsten makes much of the size discrepancy between him and Ayala and implies that Ayala larger size created a threatening atmosphere. Hogsten also suggests that from his vantage point, below Ayala at the bottom of the steps, contributed to the feeling of being at a disadvantage. Again, Hogsten fails to point to anything in the record which would support his statements. Further, the video clearly shows Hogsten taunting Ayala, which renders Hogsten's alleged feeling of being threatened implausible.

The facts in this case are similar to those of *Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) in which the Sixth Circuit upheld the denial of qualified immunity on an excessive force claim based on the deployment of pepper spray. In finding that there was evidence of a constitutional violation, the Sixth Circuit noted that the plaintiff's crime disturbing the peace was a minor one, he did not pose a threat to officers because he was unarmed at the time he was pepper sprayed and he was not "actively resisting arrest or trying to flee at the time he was pepper sprayed." *Id.* at 311. The Sixth Circuit explicitly stated that "[t]he general consensus among our cases is that officers cannot use force, including pepper spray ... on a detainee who has been subdued ... or is not resisting arrest." *Id.* at 314.

As in *Grawey*, Plaintiff was unarmed at the time he was pepper sprayed and did not appear to be actively resisting evading arrest. There is no evidence that Plaintiff was behaving in an aggressive, threatening way at the time Hogsten deployed his pepper spray. There were no weapons or indication that Ayala was about to flee, factors present in cases where the Sixth Circuit has approved the use of pepper spray. *See e.g. Bing ex rel., Bing v. City of Whitehall*, 456 F.3d 555 (6th Cir. 2006) (use of pepper spray and a flashbang device deemed not excessive force in violation of violation of the suspect's Fourth Amendment claim, where the suspect had access to a gun and posed a serious and immediate threat to others, he refused to voluntarily come out

8

of his house to be arrested). *See also, Gaddis ex rel, Gaddis v. Redford Tp.*, 364 F.3d 763 (6th Cir. 2004) (officer's decision to use pepper spray to try to incapacitate a motorist did not constitute excessive force where the suspect who had previously attempted to evade arrest, was brandishing a knife, showed signs of intoxication or other impairment, and posed a clear risk of leaving the scene).

At a minimum, factual questions exist as to the reasonableness of Hogsten's use of pepper spray, thereby precluding summary judgment.

Nor are Defendants entitled to qualified immunity. "The key determination is whether a defendant moving for summary judgment on qualified immunity ground was on notice that his alleged actions were unconstitutional." *Lyons v. City of Xenia,* 417 F.3d 565, 579 (6th Cir.2005)). A plaintiff must show that the constitutional right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). Here, the question is whether it was clearly established that using pepper spray before giving an unarmed individual the opportunity to submit to arrest constitutes excessive force. The Court finds that this right was clearly established, as examined *supra,* in *Grawey. See also, Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 903 (6th Cir.2004) (noting that the use of pepper spray is excessive force when the detainee surrenders, is secured, or is not acting violently); *Cabaniss v. City of Riverside,* 231 Fed.Appx. 407 (6th Cir.2007) (citing *Champion* for the "general rule" that the use of pepper spray constitutes excessive force when the detainee surrenders, is secure, is not resisting and does not pose a threat).

Hogsten's actions run afoul Ayala's clearly established right to be free from excessive force. Therefore, Defendants are not entitled to qualified immunity or summary judgement on this claim.

9

## B. False Arrest

A false arrest claim under 42 U.S.C. § 1983 requires a plaintiff to prove that the arresting officer lacked probable cause. *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005), *citing Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002). "For a police officer to have probable cause for arrest, there must be 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.' " *Crockett v. Cumberland Coll.,* 316 F.3d 571, 580-81 (6th Cir. 2003), quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979).

The inquiry requires this Court to examine the events leading up to the arrest and then to decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Kennedy,* 635 F.3d at 215 (quoting *DeFillippo,* 443 U.S. at 36). Ayala was arrested for menacing, defined by statute as "[a] person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." KRS 508.050.

The facts and circumstances within Defendants' knowledge at the time of the arrest were insufficient to cause an objectively reasonable officer to believe that Ayala was placing others, namely Hogsten, "in reasonable apprehension of imminent physical injury."

Defendants attempt to justify the arrest with Ayala's testimony that he was arguing with Hogsten, raising his voice and cursing. Yet, Hogsten concedes that the profanity, as vehement as it was, on both sides, is not illegal. [Docket No. 31, p. 58]. Moreover, throughout the crucial

period, Ayala is standing on his porch and Hogsten is in the yard, at the bottom of the steps. At no time does Ayala advance to be within an arm's length of Hogsten or anyone else. The lack of proximity further undercuts Hogsten's assertion that he was in "apprehension of imminent physical injury." Ayala was not armed, intoxicated or indicating a desire to flee; he was standing on his porch, several feet away from Hogsten, cursing and pointing his finger. That he was menacing, as defined by the Kentucky statute, strains the bounds of credibility and casts serious doubt on the presence of probable cause for Ayala's arrest.

Ayala has adduced sufficient proof of a constitutional violation and, therefore, Defendants are not entitled to qualified immunity in this regard.

### IV.

Accordingly, **IT IS HEREBY ORDERED** Defendants' Motion for Summary Judgment [Docket No. 32] be **OVERRULED**.

**IT IS FURTHER ORDERED** that the undersigned will convene a **JURY TRIAL** in this matter on **MONDAY, JULY 15, 2019** at **9:00 a.m.** at the United States District Courthouse in Ashland, Kentucky. The Order setting this matter for trial on May 7, 2019 is **VACATED**.

March 25, 2019.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge